IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHEL A. HILT-HAYDEN,

                Plaintiff,

     v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

                Defendant.

No. 6:15-cv-00258-HZ

OPINION & ORDER

James W. Moller
8655 SW Citizens Dr., Ste. 104
Wilsonville, OR 97070

Robert A. Baron
Harder Wells Baron & Manning, PC
474 Willamette St., Ste. 200
Eugene, OR 97401

     Attorneys for Plaintiff

1 - OPINION & ORDER

Billy J. Williams
United States Attorney, District of Oregon
Janice E. Hébert
Assistant United States Attorney
United States Attorney's Office
1000 S.W. Third Avenue, Ste. 600
Portland, OR 97201

Lars J. Nelson
Special Assistant United States Attorney
Social Security Administration
SSA Office of General Counsel
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Michel A. Hilt-Hayden brings this action under the Social Security Act ("Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), for judicial review of the Commissioner of Social Security's final decision denying her application for disability insurance benefits ("DIB") under Title II of the Act and supplemental security income ("SSI") under Title XVI of the Act. Because it is based on legally sufficient reasons supported by substantial evidence, the Commissioner's decision is affirmed.

## BACKGROUND

Hilt-Hayden applied for DIB on July 1, 2011 and SSI on July 11, 2011. Tr. 108–09.[1] She alleged disability due to a visual impairment, agoraphobia, post-traumatic stress disorder, and paranoid schizophrenia, and alleged an onset date of March 3, 2005. Tr. 110, 123. Her applications were denied initially and after reconsideration. 170–87. At a hearing before

---

[1] Citations to "Tr." refer to pages of the administrative record transcript, filed here as Docket No. 12.

Administrative Law Judge ("ALJ") Elizabeth Watson in April of 2013, Hilt-Hayden amended her onset date to August 1, 2011. Tr. 48. ALJ Watson subsequently found Hilt-Hayden was not disabled. Tr. 20–37. Hilt-Hayden sought review by the Appeals Council, and submitted additional evidence to support her claim. The Appeals Council denied her request for review, noting that while it considered the additional evidence Hilt-Hayden submitted, the new information post-dated the ALJ's May 20, 2013, decision and thus did not affect ALJ Watson's conclusion that Hilt-Hayden was not disabled through that date. Tr. 2. The Appeals Council's denial of her request for review made ALJ Watson's decision the Commissioner's final decision that Hilt-Hayden now challenges in this Court. Tr. 1–4.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). Each step is potentially dispositive. At step one, the presiding ALJ determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; if not, the analysis continues. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the ALJ determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determines whether the impairment meets or equals one of the impairments listed in the SSA regulations and deemed "so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987); 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis moves to

step four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At step four, the ALJ determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his or her past relevant work, the analysis moves to step five where the ALJ determines whether the claimant is able to do any other work in the national economy considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The burden to show disability rests with the claimant at steps one through four, but if the analysis reaches step five, the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant could perform. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f); Tackett v. Apfel, 180 F.3d 1094, 1098–1100 (9th Cir. 1999). If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g).

## ALJ DECISION

The ALJ found that Hilt-Hayden met the insured status requirement under the Act through December 31, 2016. Tr. 22. At step one, the ALJ found Hilt-Hayden had not engaged in substantial gainful activity since August 1, 2011, her alleged onset date. Tr. 22. At step two, the ALJ found Hilt-Hayden had "the following severe impairments: post-traumatic stress disorder; major depressive disorder with psychotic features; panic disorder with agoraphobia; and monocular vision in the right eye[.]" Tr. 23. At step three, the ALJ found Hilt-Hayden's impairments or combination of impairments did not meet or equal the severity of any listed impairments. Tr. 23–24. The ALJ next found that Hilt-Hayden had the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. The

claimant can never climb ladders, ropes, or scaffolds. The claimant must avoid all exposure to operational control of moving machinery, unprotected heights, and hazardous machinery. The claimant can never drive. The claimant must work in an environment where a service dog and magnifiers/accommodations for sight are allowed. The claimant can perform isolated work, with only occasional supervision.

Tr. 25. At step four, the ALJ found that Hilt-Hayden was unable to perform any past relevant work. Tr. 35. At step five, the ALJ found that, considering her age, education, work experience, and RFC, there were jobs that existed in the national economy that Hilt-Hayden could perform, including file clerk, data examination clerk, and data entry operator. Tr. 35–36. Accordingly, ALJ Watson found Hilt-Hayden was not disabled under the Act. Tr. 37.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the decision. Andrews, 53 F.3d at 1039–40. A reviewing court must consider the entire record as a whole and cannot affirm the Commissioner by simply isolating a specific quantum of supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).

//

//

//

5 - OPINION & ORDER

## DISCUSSION

**1. Dismissal for Failure to State a Legal Argument**

Before addressing the merits of Hilt-Hayden's arguments about the ALJ's purported errors, the Court first turns its attention to the Commissioner's argument that Hilt-Hayden's challenge to the ALJ's decision should be rejected in toto for failing to present a specific legal argument. Def. Brief at 5–6; Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 n.5 (9th Cir. 2008) (declining to consider a matter that was not "specifically and distinctly argued in an . . . opening brief."); Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our Circuit has repeatedly admonished that we cannot manufacture arguments . . . and therefore we will not consider any claims that were not actually argued in [an] opening brief.").

Indeed, Hilt-Hayden's opening brief makes very little argument. She initially identifies four issues for the Court to consider:

1. Does additional evidence admitted into the record by the Appeals Council from the President and Chief Executive Officer of Sunstone Service Dogs justify remand?
2. Did the ALJ fail to properly consider the lay witness statements from Hilt-Hayden's accounting client, Pierrette Paul, to the extent those statements are based on the witness' [sic] personal observations independent of Hilt-Hayden's testimony?
3. Did the ALJ properly address Hilt-Hayden's difficulties with concentration, persistence or pace and with vision in arriving at her determination of Hilt-Hayden's Residual Functional Capacity (RFC)?
4. Does the vocational expert's (VE) testimony concerning the effect on employment opportunities for individuals with limitations on concentration persistence or pace and on vision support an immediate award of benefits, or, instead, remand for further proceedings?

Pl. Brief at 2. She then proceeds to summarize, over the next eight pages, some of the evidence in the record, including the case's procedural history, her testimony at the hearing before ALJ

Watson, testimony from two lay witnesses, and portions of the ALJ's colloquy with the VE at the hearing. Pl. Brief at 2–10.

Finally, she turns to the "Argument" section of her brief, which is two pages long. Pl. Brief at 11–12. She asserts that the "ALJ failed to account for the worsening of her impairments beginning in 2005 . . . and accelerating in 2009/2010," that the "ALJ incorrectly relied on isolated incidents of social and vocational activities to conclude that [she] is capable of sustaining regular employment," and that the "ALJ failed to consider overwhelming evidence in the record establishing [her] very limited success at leading any semblance of a normal life." Pl. Brief at 11. Hilt-Hayden then affirmatively waived any challenge to the ALJ's finding that her "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely credible." Pl. Brief at 11 ("In light of the Court's limited standard of review of the ALJ's factual findings, Hilt-Hayden will not challenge the ALJ's general credibility determination"). Hilt-Hayden "does, however, challenge [the] ALJ's implicit finding that Hilt-Hayden's vision and mental health impairments do not render her unable to attend" work on a regular schedule "while keeping up the pace and staying on task with her assigned work." Pl. Brief at 11. In support of this argument, Hilt-Hayden specifically asserts that the ALJ failed in evaluating testimony from two lay witnesses, and erred in accounting for her vision impairment. Pl. Brief at 11–12.

The Court disagrees with the Commissioner that Hilt-Hayden's entire case should be dismissed for failing to raise a legal argument. Hilt-Hayden's brief raises four distinct issues and offers specific, albeit brief, arguments with references to evidence in the record. See Pl. Brief at 2, 11–12. That is sufficient for the Court to analyze her claims. It should be noted, as will become apparent in this Opinion & Order, that several individual arguments Hilt-Hayden

7 - OPINION & ORDER

attempts to advance in her brief are, in fact, undeveloped and entirely unsupported by any citation to specific evidence or legal authority. The Court will address those arguments as they arise in the following subsections.

### 2. Hilt-Hayden's RFC

Hilt-Hayden's arguments primarily attribute error to the ALJ's formulation of her residual functional capacity. See Pl. Brief at 2, 11. A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning eight hours a day, five days a week, or equivalent. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is the most a person can do in spite of limitations or restrictions. Id. "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." Id.; see also Gehring v. Colvin, No. 2:14-CV-01830-KI, 2016 WL 155046, at *4 (D. Or. Jan. 13, 2016).

As set out above, the ALJ assessed the following RFC for Hilt-Hayden:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant can never climb ladders, ropes, or scaffolds. The claimant must avoid all exposure to operational control of moving machinery, unprotected heights, and hazardous machinery. The claimant can never drive. The claimant must work in an environment where a service dog and magnifiers/accommodations for sight are allowed. The claimant can perform isolated work, with only occasional supervision.

Tr. 25.

When evaluating Hilt-Hayden's RFC, the ALJ was required to consider Hilt-Hayden's subjective statements about the intensity, persistence, and limiting effects of her symptoms. Here, ALJ Watson noted Hilt-Hayden's testimony about her vision and mental impairments,

8 - OPINION & ORDER

including that she suffered from anxiety and that she had difficulty staying on task. Tr. 25. The ALJ found her that Hilt-Hayden's statements were not entirely credible in part because they were inconsistent with the treatment records. Tr. 26. In particular, the ALJ noted reports from consulting and treating physicians which noted that Hilt-Hayden had a "somewhat overdramatic quality to her presentation," that she performed generally well on concentration and memory tasks, and that doctors could not find a "physical source of reason" for her vision issues and hypothesized some "emotional overlay and probable reasons for some secondary gain due to her vision loss." Tr. 27.

  The ALJ also discounted the credibility of Hilt-Hayden's claims because they were inconsistent with "contemporaneous reports of [her] actual functioning." Tr. 26. The ALJ noted that despite her claims of crippling social anxiety, Hilt-Hayden had "gone to the county fair, taken trips to Washington and Portland, and taken community college classes." Tr. 30. She also volunteered regularly with a nonprofit service dog organization and attended meetings there once a month, attended church almost weekly, met with a journalism student to discuss her volunteerism, and used public transportation. Tr. 29–30. The ALJ noted that Hilt-Hayden performed seasonal work as a tax preparer, worked as an auditor, and served as a treasurer for a nonprofit. Tr. 28, 29, 31.

  The ALJ also relied on a report from a Cooperative Disability Investigations Unit ("CDIU") team who visited Hilt-Hayden at her residence in 2011 to investigate suspicions that Hilt-Hayden was "attempting to fraudulently obtain SSA benefits." Tr. 429. Investigators found that "[d]espite allegations of severe vision issues, [Hilt-Hayden] had no trouble walking, opening a gate, looking at a photograph, or dialing a phone; she did, however, have trouble seeing an object that was one hundred feet away." Tr. 28; 432–33. Investigators also noted that Hilt-

9 - OPINION & ORDER

Hayden "played with a young boy, followed him around the yard, and went in and out of the home[.]" Tr. 28. They also noted that Hilt-Hayden "had a dominant personality, was very involved in group conversation, knew most people in the trailer park, and was comfortable speaking with them, as she displayed frequent laughs and smiles[.]" Tr. 28.

To the extent the Court can construe Hilt-Hayden's brief as generally challenging the ALJ's formulation of her RFC as not supported by substantial evidence, that argument is unavailing. For one, as mentioned above, she explicitly waived any challenge to the ALJ's analysis of her credibility. Pl. Brief at 11. Additionally, Hilt-Hayden does not make any argument whatsoever about the ALJ's analysis of the medical evidence, and thus any such challenge is waived. Gish v. Colvin, No. 6:14-CV-01938-SI, 2016 WL 814816, at *3 n.1 (D. Or. Feb. 29, 2016) (claimant who specifically challenged ALJ's evaluation of one doctor's opinion waived any challenge to ALJ's analysis of other medical evidence) (citing Indep. Towers of Wash., 350 F.3d at 929). The ALJ accurately summarized the medical evidence, Hilt-Hayden's daily activities, work history, and the CDIU report, and then relied on that evidence to formulate her RFC. Thus, the Court finds no error.

Hilt-Hayden also makes several vague and undeveloped arguments that seem to attack the ALJ's RFC finding. Specifically, Hilt-Hayden's argues that "ALJ failed to account for the worsening of her impairments," "incorrectly relied on isolated incidents of social and vocational activities," and "failed to consider overwhelming evidence in the record establishing [her] very limited success at leading any semblance of a normal life." Pl. Brief at 11. These arguments are unaccompanied by any citation to evidence in the record or legal authority. Although the Court declined to dismiss the entirety of Hilt-Hayden's case for failing to develop a legal argument, these particular arguments are vague and undeveloped, and are therefore waived. Jolliffe v.

10 - OPINION & ORDER

Comm'r, No. 3:14-CV-01935-HZ, 2016 WL 299018, at *8 (D. Or. Jan. 24, 2016). It is not sufficient, as Hilt-Hayden argues, to state the Court's standard of review and then simply provide a lengthy summary of the evidence, leaving the Court to trove the record and the briefing for the "truffles" supporting her claim. Indep. Towers of Wash., 350 F.3d at 929 (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991)); Garrison v. Comm'r Soc. Sec. Admin., No. 1:13-CV-01671-HA, 2014 WL 5018811, at *3 (D. Or. Oct. 7, 2014) (plaintiff waived argument that was supported by nothing more than "a lengthy recounting of her medical history . . . with almost no legal authority to put this into context or to specify where exactly the ALJ erred.").

Apart from being inadequately developed, her argument that the ALJ "incorrectly relied on isolated incidents of social and vocational activities" mischaracterizes the ALJ's analysis. The ALJ provided numerous specific and well-supported examples of Hilt-Hayden's activities and functioning, not the least of which is the CDIU investigative report that substantially conflicted Hilt-Hayden's claims of debilitating social anxiety and visual impairment. Additionally, Hilt-Hayden affirmatively waived any challenge to the ALJ's credibility analysis, a substantial portion of which relied on an analysis of her daily activities and functioning. Pl. Brief at 11.

  a. Lay Testimony

As part of her attack on the ALJ's RFC, Hilt-Hayden argues that the ALJ erred in analyzing testimony from two lay witness. "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citations omitted). The ALJ cannot disregard competent lay witness testimony without comment, but the ALJ need only give "reasons that are germane to each witness" to discount lay testimony. Id. (citations omitted).

11 - OPINION & ORDER

### i. Pierrette Paul

First, Hilt-Hayden argues that the ALJ "failed to properly consider the lay witness statements from Hilt-Hayden's accounting client, Pierrette Paul. Pl. Brief at 2. She asserts that "evidence from [Ms. Paul] documents [her] personal experience with Hilt-Hayden's limited vocational capabilities, which required that she work out of her home on her own schedule and at a reduced pace and proficiency." Pl. Brief at 12. The ALJ summarized Ms. Paul's testimony, noting that she alleged Hilt-Hayden has "difficult focusing, cannot drive, and has diminished mental capacity," and also has difficulty "leaving her home and facing society." Tr. 35. Ms. Paul noted that Hilt-Hayden was unable to take a tax consultant test due to her service dog and "disability restrictions," and that she could no longer employ Hilt-Hayden as a bookkeeper. Tr. 35. The ALJ gave her statements "some weight," noting that "[t]o the extent that [Ms. Paul's] statements are consistent with the [Hilt-Hayden's] allegations, I have already considered these issues at length." Tr. 35.

The ALJ did not err in failing to fully credit Ms. Paul's testimony. First, the RFC and the ALJ's other analysis is actually consistent with much of Ms. Paul's testimony. See Carmickle, 533 F.3d 1163 (9th Cir. 2008) (upholding ALJ's RFC formulation in part because it was "largely consistent" with testimony in the record). Ms. Paul described Hilt-Hayden's inability to take a certification test because of her "service dog and . . . disability restrictions," and the RFC expressly limited Hilt-Hayden to jobs "where a service dog and magnifiers/accommodations for sight are allowed." Tr. 25. And although Ms. Paul said she could no longer employ her to assist with her bookkeeping business, the ALJ expressly found that Hilt-Hayden could no longer perform her past relevant work as a bookkeeper. Tr. 35.

Ms. Paul's testimony also addressed Hilt-Hayden's anxiety and agoraphobia—the same conditions Hilt-Hayden testified to and which the ALJ found not entirely credible for numerous, well-supported reasons. See Watkins v. Comm'r of Soc. Sec. Admin., 611 F. App'x 903, 904 (9th Cir. 2015) (affirming ALJ's rejection of lay testimony in part because the "lay evidence describing [the claimant's] lifestyle was similar to other testimony that the ALJ found unpersuasive in light of evidence that [the claimant] could function in a work environment."); Caramella v. Colvin, No. 3:14-CV-00221-MC, 2015 WL 4041144, at *4 (D. Or. June 30, 2015) ("A germane reason to discount lay witness testimony is 'where the lay testimony is similar to other testimony that the ALJ validly discounted or where the testimony is contradicted by more reliable medical evidence that the ALJ credited.' ") (quoting Molina, 674 F.3d at 1119).

As for Ms. Paul's testimony about Hilt-Hayden's problems with concentration, persistence, and pace, the ALJ discussed at length the relevant medical evidence in the record and concluded that it did not support any more than "mild" difficulties in these areas. Tr. 33. And explained above, the ALJ considered Hilt-Hayden's testimony regarding her mental impairments, but concluded that her claims were not fully credible. Thus, the ALJ did not err in failing to fully credit Ms. Paul's testimony to the extent it overlapped with other evidence in the record that the ALJ properly considered and rejected. Molina, 674 F.3d at 1119

### ii. Heather Murlin

Hilt-Hayden also argues that lay testimony first submitted to the Appeals Council from Ms. Heather Murlin, the President and Chief Executive Officer of Sunstone Service Dogs, renders the ALJ's decision no longer supported by substantial evidence. Pl. Brief at 2. "[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative

record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1159-60 (9th Cir. 2012).

Ms. Murlin testified about the outward manifestations of Hilt-Hayden's anxiety and agoraphobia. Tr. 359. She explained that Hilt-Hayden needed medication to control her symptoms. Tr. 359. Ms. Murlin also explained that, because of Hilt-Hayden's financial situation, the nonprofit agreed to provide her a service dog in exchange for Hilt-Hayden's assistance with bookkeeping. Tr. 359–60. She described Hilt-Hayden's work as "invaluable," but also explained that Hilt-Hayden "cannot maintain a regular working day schedule." Tr. 360. Finally, Ms. Murlin described some of the accommodations the organization made to help Hilt-Hayden feel more comfortable at meetings she attended, such as arranging seating in a particular way, and holding meetings in a familiar location. Tr. 360.

This lay testimony does not change the conclusion that the ALJ's RFC determination is supported by substantial evidence in the record, for many of the same reasons set out above regarding Ms. Paul's testimony. Although Ms. Murlin testified about Hilt-Hayden's difficulties working as a bookkeeper, the ALJ expressly found that Hilt-Hayden could not perform that type of work. Tr. 35. Ms. Murlin's description of Hilt-Hayden's anxiety and agoraphobia mirror Hilt-Hayden's testimony on those issues. As previously explained, the ALJ found Hilt-Hayden's claims less than credible for a number of clear and convincing reasons, most notably, perhaps, the stark inconsistencies between Hilt-Hayden's allegations of crippling social anxiety and the CDIU investigative report. Still, the ALJ accommodated some degree of Hilt-Hayden's claimed anxiety when he limited her to "isolated work, with only occasional supervision." Tr. 26. Additionally, Ms. Murlin's testimony about Hilt-Hayden's difficulties with concentration,

persistence, and pace are nearly identical to the information in Ms. Paul's testimony and, as explained above, the ALJ discounted this evidence because it conflicted with the medical evidence in the record and evidence of Hilt-Hayden's activities. This new evidence does not, therefore, necessitate a remand.

### b. Vision Impairment and Vocational Expert Testimony

Hilt-Hayden's final argument is difficult to understand. In the beginning of the her brief, she formulates the purported error as follows:

> Does the vocational expert's (VE) testimony concerning the effect on employment opportunities for individuals with limitations on concentration persistence or pace and on vision support an immediate award of benefits, or, instead, remand for further proceedings?

Pl. Brief at 2. In the Argument section of her brief, Hilt-Hayden states that she

> concurs with the ALJ's finding that her reduced vision restricts her to employments [sic] permitting the regular attendance with Hilt-Hayden of a service dog and the provision and use of 'some kind of a magnifier' or 'some [other] accommodation to just make things bigger and more visible to her.'

Pl. Brief at 12. She then states accurately that the "ALJ found that she "suffer[ed] from monocular vision," and that Dr. Pritchard, "a state agency reviewer[,] reported that Hilt-Hayden needed to avoid activities requiring good binocular vision." Pl. Brief at 12. She then summarized a portion of the vocational expert testimony:

> The VE testified that she would require more specific information than she possessed concerning the limitations imposed by Hilt-Hayden's absence of good binocular vision and the available employability in light of the limitations imposed by her monocular vision.

Pl. Brief at 12.

15 - OPINION & ORDER

Finally, she posits that this collection of evidence shows that "[t]he ALJ's reasoning that the a magnifier or other assistive apparatus would be sufficient to permit Hilt-Hayden to function effectively in the workplace is unsupported by the record." Pl. Brief at 12.

To the extent the Court can construe this as an argument challenging the ALJ's analysis of the medical evidence regarding her vision impairment, it is unaccompanied by any citation to evidence in the record or legal authority and is waived. Garrison, 2014 WL 5018811, at *3. Moreover, the medical evidence regarding the Hilt-Hayden visual impairment was conflicting, and thus it was the ALJ's duty to resolve the conflicts and determine the appropriate weight to give to each medical source. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ contrasted treatment records from Dr. Karren, an ophthalmologist, who noted Hilt-Hayden had only "mild" constriction of her visual field in her left eye, with Dr. Pritchard's opinion that Hilt-Hayden should avoid activities requiring good binocular vision. Tr. 27–28. The ALJ gave Dr. Karren's opinion "substantial weight" and discounted the visual limitation from Dr. Pritchard's opinion, in part because Dr. Karren was an examining physician who specialized in ophthalmology and Hilt-Hayden's activities did not support any further limitation. Tr. 32. Notably, Hilt-Hayden does not offer any argument challenging any of these findings, and the Court's independent review finds they are well supported by substantial evidence in record.

Finally, the ALJ's conclusion that Hilt-Hayden was limited to performing jobs where she would be provided a magnifier was not, as Hilt-Hayden seems to argue, based on the vocational expert's testimony, but on the medical evidence, the reports of Hilt-Hayden's daily activities, and the fact that Hilt-Hayden successfully used a magnifier while working as a tax preparer at H&R Block. The ALJ noted that her job there ended because of seasonal layoffs, not because the magnifier was not a sufficient accommodation. Tr. 32. The first hypothetical the ALJ posed to

the vocational expert included a limitation that the person would "need some kind of . . . magnifier . . . or have some accommodation to just make things bigger and more visible." Tr. 93. The VE's later testimony regarding Hilt-Hayden's "monocular vision" does not in any way undermine the ALJ's inclusion of a magnifier limitation in Hilt-Hayden's RFC, and therefore the Court finds no error.

## CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this 14 day of June, 2016.

_____
MARCO A. HERNÁNDEZ
United States District Judge